In re **AMES DEPARTMENT STORES, INC.; Eastern Retailers Service Corporation; and all subsidiaries of Ames Department Stores, Inc.**

In re **ZAYRE CENTRAL CORP.,** successor in interest to Ames–G.C. Company, Inc., Debtors.

**Skadden, Arps, Slate, Meagher & Flom, Esqs., Appellant.**

**Nos. 869, 1051, Dockets 93–5001, 95–5049.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1996.

Decided Feb. 5, 1996.

Michael L. Cook, New York City (Brad J. Axelrod, Dennis F. Dunne, Neal Jacobson, Skadden, Arps, Slate, Meagher & Flom, New

York City, of counsel), for Appellant Skadden, Arps, Slate, Meagher & Flom.

Unopposed.

Before: VAN GRAAFEILAND, MINER and CABRANES, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Skadden, Arps, Slate, Meagher & Flom ("Skadden"), a nationally known and highly regarded law firm, appeals from a final order of the United States District Court for the Southern District of New York (Duffy, J.). The order affirmed a final order of the United States Bankruptcy Court for the Southern District of New York (Goodman, J.) which denied Skadden $35,000 in attorneys fees. For the reasons that follow, we vacate and remand.

Skadden represented Ames Department Stores, its affiliates and subsidiaries (collectively "Ames") in its successful reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101 *et seq.* One of the problems that arose during the Chapter 11 proceeding was whether Ames could exercise its contractual right to terminate a group life insurance plan. The plan, which was adopted in 1918 by G.C. Murphy Co., one of Ames' affiliated companies, provided modest life insurance benefits for its employees. When the Ames group acquired Murphy in 1985, it continued the plan in operation for Murphy retirees, a group that numbered approximately 2500 when Ames petitioned to terminate the plan in 1992. At that time, the annual cost of the plan exceeded $400,000, and it was estimated that, unless the plan was terminated, Ames would have to pay in excess of $4.7 million during the remainder of the plan's existence. Obviously, Ames would save a substantial sum if it could exercise the option given it by the terms of the plan to terminate it at will. However, developments in the law which antedated Ames' reorganization created a question as to whether Ames' option could be exercised.

■ In 1986, The LTV Corporation petitioned for Chapter 11 reorganization and then promptly announced the termination of the life and health insurance benefits of approximately 78,000 employees. A widespread adverse reaction to this move prompted Congress to enact amelioratory legislation, the end result of which was the Retiree Benefits Bankruptcy Protection Act of 1988, Pub.L. 100–334, 102 Stat. 610, codified in pertinent part in 11 U.S.C. §§ 1114 and 1129(a)(13). *See Pension Benefit Guar. Corp. v. The LTV Corp.,* 496 U.S. 633, 640–41, 110 S.Ct. 2668, 2672–73, 110 L.Ed.2d 579 (1990); *In re Chateaugay Corp.,* 140 B.R. 64, 67–69 (S.D.N.Y.1992), *vacated as moot,* 153 B.R. 409 (S.D.N.Y.1993). In substance, section 1114 precludes a debtor in possession from modifying retiree benefits unless "necessary to permit the reorganization of the debtor," and provides for consultation between the debtor or plan trustee and an "authorized representative" of the retirees towards the end that an agreement concerning modification might be reached and court approval sought.

As our exhaustive experience with RICO has taught us, a statute which at first glance appears to be "plain on its face," *see* description of RICO in *United States v. Vignola,* 464 F.Supp. 1091, 1096 n. 11 (E.D.Pa.), *aff'd,* 605 F.2d 1199 (3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), may require substantial judicial interpretation. Section 1114 turned out to be such a statute. In *In re Ionosphere Clubs, Inc.,* 134 B.R. 515 (Bankr.S.D.N.Y.1991), Chief Bankruptcy Judge Lifland described this section as follows:

> This provision, enacted with 11 U.S.C. § 1129(a)(13), has spawned diverse and sometimes inconsistent interpretations and theories as to the substantive and procedural standards necessary for modification of retiree benefits. Expressed colloquially, these interpretations are all over the lot. Some are well reasoned, some conclusory with limited analysis.

*Id.* at 517 (footnote omitted).

Judge Lifland then cited nine cases in support of the foregoing observation, among which were *In re Chateaugay Corp.,* 945 F.2d 1205 (2d Cir.1991), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1167, 117 L.Ed.2d 413 (1992) and *In re Doskocil Companies, Inc.,* 130 B.R. 870 (Bankr.D.Kan.1991). In *Cha-*

*teaugay,* the debtors were obligated by the terms of the 1984 National Bituminous Coal Wage Agreement to pay health benefits to their retired employees. We held that upon termination of the Wage Agreement, the debtors' obligation to pay benefits ceased. Ergo, the cessation procedures of section 1114 were not applicable. The facts of *Doskocil* were more closely aligned to those of the instant case, in that the debtor relied upon language in its benefit plan permitting the debtor to modify or terminate the plan. Despite this difference, the *Doskocil* court followed the lead of *Chateaugay* in holding that section 1114 was not applicable.

At a later point in his opinion, Judge Lifland specifically discussed these two cases:

The Creditors' Committee has argued that under the recent *In re Doskocil Companies Inc.,* 130 B.R. 870 (Bankr.D.Kan. 1991) and *In re Chateaugay Corp.,* 945 F.2d 1205 (2d Cir.1991) decisions the Trustee is free to terminate retiree benefits as this right was preserved in various summary plan descriptions. These cases held that section 1114 does not protect retiree benefits beyond the contractual obligations of the debtor. Consequently, the Creditors' Committee argues that Eastern is free to terminate retiree benefits at any time. Such termination of benefits would be absolute; no claim whatsoever would arise against the estate. The Trustee, however, has not requested such a termination of benefits and, therefore, this court offers no opinion on the parties' rights in this respect.

*Ionosphere, supra,* 134 B.R. at 519 n. 4.

Like the attorneys for the creditors' committee in *Ionosphere,* Skadden moved the bankruptcy court for permission to terminate Ames' plan without regard to the provisions of section 1114. In a ruling from the bench, made without reference to the above cases or any other authority, Bankruptcy Judge Conrad said:

I have read what you wanted me to read. Let me make my finding just in case you appeal. I think it is clear beyond peradventure of a doubt, based upon the pleadings that are in this record, that 1114 applies. It is the clear intent of Congress.

These are retiree benefits, period. Those are my findings of fact and conclusions of law under 7052.

The district court affirmed in an order not officially reported, and we are not asked to overturn that ruling. However, *sua sponte* and without notice, the district court decided that Skadden was not entitled to any fees for its services in connection with the appeal. Following the bankruptcy court's confirmation of a reorganization plan for Ames, Skadden filed an application for payment of its fees. The bankruptcy court, feeling "bound by the Judgment to disallow any of the fees that Skadden, Arps incurred in connection with the Appeal," reduced Skadden's total fee award by $35,000, "which represents all the fees incurred by Skadden, Arps in connection with the Appeal." Upon Skadden's appeal to the district court, this order was affirmed. The propriety of the order, promulgated as directed by the district court, is the sole issue on this appeal. No opposition to Skadden's requested reversal has been voiced. Skadden has announced that if it is successful, it will waive any recovery from Ames of fees and expenses incurred in challenging the bankruptcy court's fee determination.

## DISCUSSION

Because of its singular relevance to Skadden's position herein, we begin our discussion with an excerpted statement of Shakespeare:

Who steals my purse steals trash; ...
But he that filches from me my good name
... makes me poor indeed.

*Othello* act 3, sc. 3.

Thirty-five thousand dollars is not exactly "trash," even to a large and successful law firm such as Skadden. However, because of the cost of challenging the fee determination for which Skadden seeks no reimbursement, the net financial benefit to Skadden, even if successful, might well fit the description of trash. In short, it is obvious that Skadden's primary purpose in pursuing this matter is to eradicate the damage to its good name resulting from the acts and comments of the district court in mandating the bankruptcy court's disallowance of fees.

As a general rule, an order of a district court acting as an appellate court in a bankruptcy case is subject to plenary review, which permits this Court to make an independent review of the bankruptcy court's findings and conclusions. *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994). In the instant case, however, the bankruptcy court made no factual findings and reached no legal conclusions in denying Skadden's fee application. It simply obeyed the district court's mandate. Accordingly, in determining the existence *vel non* of legal and/or factual error, we look to what the district court, not the bankruptcy court, did.

In its first order, which affirmed the bankruptcy court's holding concerning the applicability of section 1114, the district court, referring to Ames' expressed desire to avoid what it considered unnecessary expense in complying with the provisions of section 1114, said:

It appears to me that the only thing which is expensive and unnecessary here is this appeal. Clearly, the interests and rights of the Retired Employees should not go unprotected. The appointment of the Employees' Committee as the authorized representative of the retirees, pursuant to § 1114 of the Bankruptcy Code, affords the Retired Employees with an appropriate voice in which to be heard during these proceedings. Further, I find that the Debtor's cavalier attempt to unilaterally terminate the Retired Employees' insurance benefits produces a drastic and most undeserving result.

It then added:

This appeal borders on the frivolous and may well be put forward merely as a means to generate attorneys' fees to denude the bankrupt estate of any value whatsoever. It raises sufficient question as to the motivation of counsel that one would expect the Bankruptcy Judge to scrutinize all fee and disbursement requests by the Debtor's attorneys to assure that no unnecessary work is paid for out of the estate.

On the second appeal, the district court continued its discussion of the fee issue as follows:

The issue of attorney compensation ultimately turns on what the attorney's services are worth to the estate. Some benefit to the estate must be found before an attorney can recover fees in a bankruptcy proceeding.

. . . .

The appeal by Skadden, Arps accomplished nothing, and was worth nothing to the estate. The appeal clearly had no merit. It offered no benefit to the estate, and in fact, if the fees were not reduced, the appeal would have substantially damaged the estate. It was both unnecessary and costly, and should be viewed as an attempt by counsel to merely manufacture paperwork, and thus generate fees. The estate of the Ames Group reaped no benefits whatsoever from the baseless appeal undertaken by its attorneys. Such blatant disregard for the well-being of the bankrupt estate and for one's client should not be tolerated and will not be condoned by this court.

Because of the deleterious nature of the foregoing comments it was especially important that the orders in which they are contained meet the procedural and substantive requirements of the law. We note first that the district court did not specify the authority for its imposition of sanctions. Inasmuch as different sanction mechanisms— such as Fed.R.Civ.P. 11 (and its counterpart in bankruptcy proceedings, Bankruptcy Rule 9011), 28 U.S.C. § 1927, or the court's inherent authority to curtail abusive litigation practices—involve different substantive standards, we have repeatedly required courts to specify the source of their authority to impose sanctions. *See, e.g., Coltrade Int'l, Inc. v. United States*, 973 F.2d 128, 131–32 (2d Cir.1992); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 73 F.3d 1253, 1261 (2d Cir.1996). Moreover, due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions. *See, e.g., Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994) (Rule 11); *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 936 (2d Cir.1992) (28 U.S.C. § 1927); *see also Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir.1995) ("[T]he funda-

mental requirements of due process—notice and an opportunity to respond—must be afforded before any sanction is imposed."). Nothing in the instant case even approached a notice and opportunity to be heard before the district court ordered a denial of Skadden's requested fee.

■ Furthermore, we are convinced that Skadden's conduct in this case is simply not sanctionable. We think that there is substantial room for disagreement with the categorical holding in the district court's orders that the debtor was required to follow the requirements of section 1114. Accordingly, it cannot be said that Skadden's argument was frivolous. At the time the bankruptcy court made its ruling, the applicability of section 1114 in a case where the debtor had the contractual right to terminate a pension plan was a wide open question. Such authority as existed on the question favored the interpretation urged by Skadden. *See, e.g., Chateaugay* and *Doskocil, supra.*

Indeed, before the district court issued its order in the fee appeal, the United States District Court for the District of New Jersey handed down an unreported decision in the case of *In re New Valley Corp.,* No. 92–4884, 1993 WL 818245 (D.N.J. Jan. 28, 1993), in which the issue of the applicability of section 1114 was squarely presented. Citing *Chateaugay* and *Doskocil, supra,* plus *In re Federated Dept. Stores, Inc.,* 132 B.R. 572 (Bankr.S.D.Ohio 1991), the *New Valley* court held that section 1114 did not apply where the debtor had the contractual right to terminate the plan at issue. The court expressly refused to follow the district court's first opinion in the instant case, and the court below was aware of that fact before it wrote its second opinion, in which it castigated Skadden for bringing the appeal.

The editors of *Collier on Bankruptcy* (hereinafter *"Collier"),* a well-recognized authority in this area of the law, found the above interpretation of the law to be persuasive. They said "Section 1114 does not, however, protect retiree benefits beyond the contractual obligations of the debtor." 5 *Collier* ¶ 1114.02[1][a] at 1114–13 (15th ed. 1995). *See also id.* ¶ 1114.02[2] at 1114–16 ("Retirees are protected by section 1114 from the termination of benefits due to the filing of a petition under the Bankruptcy Code, but they are not protected from the termination of rights due to the expiration of the agreement."). Not one of the foregoing authorities was discussed or even mentioned by either the bankruptcy court or the district court. More importantly, neither court cited any interpretive authority that conflicted with that above cited. Because our review is limited to the merit of Skadden's fee application as of the time it was made, we see no need to examine into the present status of the pertinent law.

■ We therefore direct the district court to remand this matter to the bankruptcy court for a redetermination of Skadden's fee. We believe that in resolving the fee issue on remand, the bankruptcy court should avoid the niggardly approach of the district court, which would make Skadden's fee entitlement contingent upon a showing of actual benefit to the estate. Prior to the 1978 enactment of 11 U.S.C. § 330, economy of administration was the byword in bankruptcy proceedings, and applications for fee awards were closely scanned with this thought in mind. *See Callaghan v. Reconstruction Finance Corp.,* 297 U.S. 464, 468–69, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1936). In enacting section 330, Congress departed somewhat from this doctrine of strict review, taking the position that "compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In the Matter of UNR Indus., Inc.,* 986 F.2d 207, 208–09 (7th Cir.1993). With the 1994 amendments of section 330, Congress made another move towards greater equity in estate management. It provided that an award for fees might be made for services that were "beneficial at the time at which the service was rendered," § 330(a)(3)(C), and, by inverse construction, "reasonably likely to benefit the debtor's estate." *Id.* (a)(4)(A)(ii)(I).

■ Although debtors' attorneys were not specifically included in the coverage of the amended section 330, *Collier* asserts that this omission was inadvertent. *See* 2 *Collier* ¶ 330.01 at 330–8–9; ¶ 330.04 at 330–41–43.

We are inclined to agree. However, the merit of Skadden's fee application should not hinge on the accuracy of *Collier*'s assertion. Where the benefits of services to the estate are the same, it makes no sense to treat performances of such benefits by debtors' attorneys differently than performances by other retained professionals. This accords with "the statute's aims that attorneys be reasonably compensated and that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation." *UNR Indus., supra,* 986 F.2d at 210. As reasoned in *Collier,* if the services of a debtor's attorney "are reasonably likely to benefit the debtor's estate, they should be compensable." 2 *Collier* ¶ 330.04 at 330–43. Upon remand, this is the test the bankruptcy court should apply in an objective manner, based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances. *See In the Matter of Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir.1995).

The district court's order of June 5, 1995 is vacated. The matter is remanded to the district court with directions to remand to the bankruptcy court for reconsideration of Skadden's fee application in accordance with the principles set forth herein.