**In re GF CORPORATION, Debtor.**

**In re GF FURNITURE SYSTEMS, INC., Debtor.**

**Bankruptcy Nos. 490–00621, 490–00622.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 11, 1990.

Michael A. Gallo, Youngstown, Ohio for GF Corp. and GF Furniture Systems, Inc.

Harry W. Greenfield, Cleveland, Ohio, for Official Creditors Committee.

Staughton Lynd, Youngstown, Ohio, by Permission of the Court.

D. Keith Roland, Youngstown, Ohio, for Official Salaried Retirees Committee of Creditors.

Joseph M. Houser, Youngstown, Ohio, for the City of Youngstown.

David M. Fusco, Cleveland, Ohio, for United Steelworkers of America, AFL-CIO, CLC and all USWA Retirees.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the motion of the Debtor-in-Possession ("DIP") to compromise employee and retiree claims upon rejection of various collective bargaining agreements and for the modification of retiree benefits. Also pending before this Court are the motion of the DIP to reject employee contracts, the motion of the DIP asking this Court to reconsider its June 7, 1990 Order, and the motion of the Unsecured Creditors' Committee to convert this case to Chapter 7. Various objections have been filed with regard to the motion to reject employee contracts, including the objections of The United Steelworkers of America ("USW") and the Salaried Retirees' Committee ("Salaried Retirees"). Furthermore, several individual retirees, whose standing in these proceedings is disputed ("Individuals"), have filed objections to the proposed compromise, which objections the USW and the Salaried Retirees have asked this Court to strike for lack of standing.

For the reasons stated below, the motion to compromise will be approved, and our June 7 Order will be vacated in part to comply with the compromise. Other pending motions regarding the compromise are overruled to the extent they are inconsistent with this Opinion. Due to the emotional nature of the compromise, the Individuals' objections will be considered despite the apparent lack of standing. The motions of the USW and the Salaried Retirees to strike these objections are therefore overruled in part, to the extent that the objections will not be stricken. The claimed Rule 11 violations will be the subject of a separate hearing.

## FACTS

GF Furniture Systems, Inc. and its parent company, GF Corporation, filed petitions for relief under 11 U.S.C. Chapter 11 on April 18, 1990. From the inception of this case it has been apparent that the DIP is liquidating. It entered bankruptcy with the objective of restarting its recently shut down furniture manufacturing facilities and selling most of its assets to a prospective purchaser it had already identified. *See, In re GF Corp.*, 115 B.R. 579, 580 (Bankr.N.D.Ohio 1990). The sale of the assets by the DIP proved to be in the best interest of creditors, and the sale was approved on June 1, 1990.

One continuing source of great concern is the unpaid health insurance benefits for hundreds of GF retirees. Since shortly before the filing of the petition, GF has failed to make required payments, leaving many of these retirees without sufficient health insurance. The USW and other retirees moved this Court for an order requiring the DIP to pay such benefits, as required by 11 U.S.C. § 1114(e)(1). In a previous Opinion issued June 7, 1990, we discussed the possible remedies where retiree benefits were not being made, and we concluded that

unpaid retiree benefits would have an administrative expense priority, as provided by § 1114(e)(2). *GF*, 115 B.R. at 586. Furthermore, we concluded that these benefits should be paid as soon as unencumbered funds were available in the estate to make payment, despite the fact that this holding created a "super-priority" and might hasten conversion to a Chapter 7 case. *GF*, 115 B.R. at 586.

Subsequent to that Opinion (and the filing of the motion for reconsideration and the motion to convert), the DIP, the USW, the Salaried Retirees, and the Unsecured Creditors' Committee negotiated a compromise. Their agreement, now before the Court, would result in the rejection of collective bargaining agreements pursuant to § 1113 and retiree benefit obligations pursuant to § 1114 as of July 31, 1990. Retiree benefit claims arising up to that date would, presumably, retain their status as administrative expenses, and benefit claims arising after that date would become general unsecured claims.[1] The agreement calls for the DIP to set aside funds to be received by it in the near future[2] for an early distribution on administrative claims as allowed by the Court. A bar date for *all* claims would be set promptly so that the DIP will be able to present to the Court more information regarding the amount of administrative claims and the fund available to satisfy them. In exchange for the rejection of the remaining retiree claims, the Unsecured Creditors' Committee would withdraw its motion to convert and wait upon funds coming in to the estate later for payment of unsecured claims. The Committee estimates that by not forcing the immediate conversion of the case, the general unsecured creditors will lose one to two percent on the ultimate distribution on their claims. But because this difference is estimated to be between a distribution of

one and three cents on the dollar, the Committee considers it de minimis when compared to the benefit to be provided the retirees.

The compromise agreement presents this Court with several issues, the most pressing of which is the agreement's apparent conflict with the June 7 Order. If approved by the Court, the compromise would supersede the instruction in the June 7 Order that retiree benefits should be paid as soon as funds are available to pay them. This requires the Court to revisit the issue of Congressional intent in enacting § 1114.

## DISCUSSION

The bulk of the proposed compromise constitutes a predictable course of events in a liquidating Chapter 11 case. The DIP must set a bar date for claims in order to formulate a feasible plan of liquidation. Also, the DIP would be expected to seek the authority to reject employment contracts and to pay administrative expenses. The only complications are that the compromise would supplant a portion of the June 7 Order and that the compromise is premised on the rejection of the employment agreements.

Section 1114(e)(1) states that the DIP "shall timely pay" retiree benefits, while § 1114(e)(2) states that payments required to be made pre-confirmation have the "status of an allowed administrative expense." This Court previously discussed the difficulty in giving effect to both provisions. *GF*, 115 B.R. at 584–586. There, we concluded that the Court could not require the invasion of collateral to satisfy retiree benefit payments, and that the only apparent remedy for their non-payment was allowance as an administrative expense. *GF*, 115 B.R. at 584–586. In an effort to give

---

**1.** The compromise agreement leaves to a later determination of the Court the exact disposition and payment of the administrative claims; however, that the retiree claims after rejection on July 31, 1990 would become general unsecured claims was implicit in the parties' understanding of the agreement, as expressed at the hearing on this matter, and this view is also consistent with the legislative history of § 1114.

*See, GF*, 115 B.R. at 584; S.Rep. 119 at 14, 1988 U.S.Code Cong. & Admin.News pp. 683, 691.

**2.** The DIP is in the process of liquidating its remaining real property. In addition, the first substantial installment of the proceeds from the June 1, 1990, sale of substantially all of the DIP's assets is due in approximately three months.

effect to both subsections (e)(1) and (e)(2), the Court also required that retiree benefit payments would be made by the DIP promptly "as soon as there are unencumbered assets available to make such payments," *GF*, 115 B.R. at 586, although this treatment was clearly incompatible with the statutory procedure for allowing and paying administrative expenses:

> The Court recognizes that by requiring the DIP to pay retiree benefits as soon as it has the funds to do so, the Court is, in effect, creating a super-priority without the authority of an explicit provision of the Bankruptcy Code. To do otherwise, however, would ignore the mandate of § 1114(e)(1) that the DIP "shall timely pay" these benefits. The decision of the Court today, while it may have the undesirable result of hastening the conversion of this case to Chapter 7, represents the closest adherence to the stated objectives of Congress that this Court can enforce.

*GF*, 115 B.R. at 586. This Court's suspicions in June have proved correct: It is now evident that this Order facilitated the undesirable result of conversion more than it advanced the Congressional intent that the retirees be provided with insurance coverage.

If the prior Order of the Court is to remain in effect without the proposed compromise, the conversion of this case is a virtual certainty. Taken literally, our interpretation of § 1114(e)(1) would deprive the Debtor of any funds coming in to the estate with which it might pay any remaining employees or the upfront expenses incurred in its liquidation. This burden would make an orderly Chapter 11 liquidation, let alone a reorganization, impossible. This Court has already opined that in this case the appointment of a trustee unfamiliar with the business would be more costly than allowing the DIP to proceed with a liquidation. By supplanting the provision of the June 7 Order regarding the use of unencumbered funds, the compromise agreement demonstrates that the DIP cannot continue to liquidate under Chapter 11 and continue to provide open-ended retiree benefits.

Conversion to Chapter 7 upon the motion of the Unsecured Creditors' Committee is not automatic. However, it is clear that the growing amount of super-priority retiree claims, without the compromise, would constitute grounds to convert. Specifically, these claims create a "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation...." 11 U.S.C. § 1112(b)(1). Even if the Unsecured Creditors' Committee were unsuccessful in its attempt to convert, it seems quite likely that the DIP would not be able to propose a confirmable plan and would likely convert the case.

The rejection of the collective bargaining agreements received the consent of the USW and the Salaried Retirees. Both agreed that the requirements of 11 U.S.C. § 1113 were either met or had been waived. These authorized representatives consented to the rejection of the contracts because they recognized that the alternative was conversion, which would likely eliminate the administrative expense priority their clients now held, substantially delay any distribution to those retirees, and, at the very least, increase the costs of litigating the status of the remaining claims.

The Individuals' objections questioned, among other things, the prospects for conversion on the Unsecured Creditors' Committee's motion and why funds already in the possession of the DIP had not been used to pay retiree benefits. As noted above, the conversion of the case is not automatic upon the motion of the Unsecured Creditors' Committee; however, the Individuals' objection fails to account for the other aspects of this case which make conversion quite likely if the compromise is not approved. The funds allegedly retained by the DIP were most likely held in anticipation of the compromise, and counsel for the Individuals was not privy to the negotiations for this compromise. The amount of funds on hand is de minimis when compared to the amount of retiree claims. Although the Individuals' objections generally missed the mark when considered in the light of the practicalities of this case, they were not entirely without merit, and the Court found it helpful to

consider the suggestions and questions raised.

Finally, the Court may approve a compromise upon the motion of the DIP and after notice and a hearing. Bankr.R. 9019(a). "The decision to approve a given compromise lies within the discretion of the trial court. Such approval should only be given where the settlement is both fair and equitable." *In re SIS Corp.*, 108 B.R. 608, 612 (Bankr.N.D.Ohio 1989) (citing *Protective Committee v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)); *see also*, 9 King, *Collier on Bankruptcy* § 9019.03[2] (15th ed.1990). At first glance, it may appear that the compromise in the present case inappropriately treats pre-petition retiree claims as priority claims. *See*, *SIS*, 108 B.R. at 609–610. However, the administrative priority of *all* unpaid retiree benefits is expressed in § 1114, and it was clearly the intent of Congress, in enacting § 1114, to prevent the recurrence of the LTV Steel situation where the debtor-in-possession claimed that pre-petition retiree claims could not be paid prior to confirmation. *See, GF*, 115 B.R. at 582.

## CONCLUSION

In the present case, the DIP has demonstrated that the proposed compromise is fair and equitable to all creditors of the estate. The compromise does not propose that any claims be treated in a manner inconsistent with the Bankruptcy Code but rather seeks to pay all administrative claims incurred to a date certain with the first substantial funds to be received by the estate. The USW and the Salaried Retirees have consented to the rejection of collective bargaining agreements and to the compromise, and thus the only remaining obstacle to the approval of the compromise is its conflict with this Court's June 7 Order. That Order's attempt to enforce the mandate of § 1114(e)(1) created a super-priority which was a significant departure from the statutory scheme of Chapter 11 and which made the orderly liquidation of the DIP a virtual impossibility. It was not the purpose of enacting § 1114 to force debtors-in-possession into Chapter 7. *GF*,

115 B.R. at 584; 134 Cong.Rec. S6825 (daily ed. May 26, 1988) (remarks of Sen. Metzenbaum).

Therefore, the proposed compromise agreement is approved. This Court's previous Order of June 7, 1990 is vacated to the extent that it required the DIP to make immediate payment of retiree benefits with any unencumbered funds available. Rather, those claims will be paid according to the compromise agreement and the further Order of this Court. The motion of the DIP to reconsider is sustained in part to reflect this conclusion. The remaining objections to the compromise and objections to the motion to reject the collective bargaining agreements are overruled to the extent they are inconsistent with this Opinion. Pursuant to the terms of the compromise agreement, the motion to convert is dismissed.

An appropriate order shall issue.